WILLIAM CONNOLE *vs.* LUKE CONNOLE *et al.*

JANUARY 17, 1923.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

(1) *Dower. Erroneous Recital of Statute in Decree. Surplusage.*

Where a decree of a probate court assigned to a widow as her dower "one-third of the net rents and profits arising out of said estate" and erroneously recited that the assignment was made in accordance with the provisions of sec. 17, cap. 329, Gen. Laws, 1909, when the authority was conferred by Section 2, the erroneous recital should be treated as surplusage as should also the recital, "said sum to be and remain until further order of this court a fixed charge upon the estate," the assignment of dower under Section 2 being absolute and a charge upon the land which cannot be relieved therefrom without the consent of the dowress.

(2) *Dower. Modification of Decree.*

Where by decree the widow was assigned one-third of the rents and profits of the real estate improved and unimproved and by a later decree there was set off to her by metes and bounds the entire improved real estate as an estate in addition to dower, subject to the same conditions by the entry of the second decree the first was modified at the request of the widow and then the widow acquired a life estate in all said improved property subject to forfeiture to the reversioners for waste as provided by statute.

(3) *Dower.*

In an estate consisting of productive and non-productive portions, the widow had a life estate in the productive portion and three brothers of intestate were tenants in common in fee of the reversion and also tenants in common in fee of the unproductive portion said last portion being charged with the right of the widow to receive one-third of the rents and profits during her life. After filing of a bill for partition *by consent* a decree was entered ordering all the real estate sold, and the proceeds were turned into the registry of

the court. The decree provided for the distribution of the proceeds of the sale of the unproductive portion by first awarding the widow a gross sum intended to represent the present value of her dower interest in said land and by then dividing the balance equally among the heirs at law and in the proceeds of the productive portion the court awarded the widow a gross sum which it found to be the present value of her life estate in such property and divided the balance equally among the heirs at law.

*Held,* that the proceeds of the sale should have been treated as land and disposed of in accordance with the respective interests of the parties; and after deducting from the proceeds of the sale of the unimproved estate the portion of the costs charged against it, one-third of the balance should be securely invested and the interest paid to the widow for life and the remaining two-thirds divided among the heirs at law, and after deducting from the proceeds of the sale of the improved portion that portion of the costs charged against it the balance should be securely invested and the interest paid to the widow for life, and after her death the fund should be divided among the heirs at law.

*(4)   Dower.   Awarding Gross Sum.*

It appeared that the court treated the suit for partition as if it were a proceeding to set off dower, but in such case dower cannot be assigned to a widow by awarding her a gross sum in the proceeds of the sale of real estate without express statutory authority or the consent of all parties. Such method of assignment is not recognized in our statutes. *Dictum* in *Sheffield* v. *Cooke,* 39 R. I. at p. 268 criticised.

*(5)   Dower.   Jurisdiction of Equity.*

While courts of equity have jurisdiction in cases of dower they are without power to assign it in any other manner than that provided by law.

*(6)   Dower.   Mortality Tables.   Expectancy of Life.*

In assigning dower in the proceeds of the sale of land the use of mortality tables is unnecessary, because the court is not called upon to determine the widow's expectancy of life.

*(7)   Dower.   Partition.   Costs and Expenses.*

Real estate was sold under partition proceedings consisting of productive and non-productive portions, in which portions the widow had different interests.

*Held,* that there should be charged against the price received for each portion the same part of the total costs and expenses as the price received for that portion was of the total amount received for all the estate.

BILL IN EQUITY for partition. Heard on appeal of complainant from decree of Superior Court.

SWEETLAND, C. J.   The above entitled cause is a suit in equity for partition of certain land in which the complainant and the respondents Luke Connole and Thomas Connole

are tenants in common.    In a portion of said land the respondent Clara Connole is entitled to one-third of the rents and profits, which one-third has been assigned to her as dower, in the rest of said land she has a life estate which has been set off to her as an estate in addition to dower.

At the time of commencing this suit a portion of said land was improved and productive and the rest was unimproved and unproductive.    The cause is before us upon the complainant's appeal from a decree of the Superior Court making partition by a distribution of the proceeds of the sale of all of said land.

It appears that said land comprised all the real estate of which John Connole late of Cranston, deceased, died seized and possessed, that said John died in 1906 intestate and without issue.    The complainant, William Connole, and the respondents Luke and Thomas Connole are the brothers and sole heirs at law of John Connole.    Clara Connole is the widow of John Connole.    It further appears that on November 14, 1919, prior to the commencement of this suit, upon the petition of Clara Connole, the Probate Court of Cranston assigned to her as and for her dower one-third of the net rents and profits arising out of all the real estate of which John Connole died seized and possessed.    Later, on the petition of Clara Connole said probate court on July 30, 1920, allowed and set off to her by metes and bounds to hold in addition to her dower, subject to the same conditions and for the same time as she holds her estate of dower, certain real estate, the same being all of the improved and productive real estate of which John Connole died seized and possessed, which later decree was affirmed by order of this court in *Connole* v. *Connole*, 43 R. I. 470.

In the Superior Court and before us the complainant attacked these two decrees of the Probate Court of Cranston and contended that they should be treated as nullities.    The decree of November 14, 1919, assigned to the widow as her dower "one-third of the net rents and profits arising out of said estate," and erroneously recited that the assignment

was made in accordance with the provisions of Section 17, Chapter 329, General Laws, 1909. The authority to assign dower to a widow in a special and certain manner as of a third part of the rents, issue, growth or profits of the real estate of her deceased husband is conferred by Section 2 of said chapter and not by Section 17, which latter section provides for the assignment of a fixed rental in substitution for an assignment by metes and bounds. The erroneous recital, however, does not render the decree invalid; it should be treated as surplusage, as should also the following language in the decree, on which the complainant lays stress: "Said sum to be and remain, until further order of this Court, a fixed charge upon the estate of which said John Connole died seized and possesssed." From this the complainant urges that the decree was qualified and not final, that it might be modified or revoked by the probate court at any time upon the application of a party in interest and contrary to the wish of the dowress. We do not approve the contention. The assignment of dower when made in a special manner as provided in said Section 2 is absolute. It stands in substitution for an assignment of an estate for life by metes and bounds and becomes a charge upon the land which is not to be relieved therefrom by the probate court without the consent of the dowress.

Complainant's objection to the latter of these two decrees (2) is based upon the following language contained therein: "she to hold such real estate in addition to her dower subject to the same conditions and for the same time as she holds her estate of dower." His contention is that as there has been no valid assignment of dower, the widow did not obtain an unqualified estate by this decree which only purports to assign to her an estate "subject to the same conditions and for the same time as she holds her estate of dower." The language quoted from the decree is that of the statute authorizing the allotment to a widow of an estate in addition to her dower. Its purpose is to define the nature of all such estates, as being for life, subject to forfeiture for the reasons

for which an estate of dower may be forfeited. Moreoever this contention of the complainant depends upon the validity of his objection to the first decree and falls with it. In *Connole* v. *Connole*, 43 R. I. 470, both of these decrees were held to be valid and the complainant in his argument has presented nothing which would lead us to overrule that case.

(3) By the first decree there was assigned to the widow one-third of the rents and profits of all said real estate, improved and unimproved. The second decree purported to set off to her by metes and bounds the entire improved real estate as an estate in addition to dower to hold upon the same conditions and for the same time as she holds her estate of dower. Whether it be considered that the second decree giving to the widow a life estate in all the improved real estate was a modification of the first decree in so far as that related to such improved real estate, or it be held that the interest in the improved property which she received by the first decree became merged in the greater allowance given to her by the second has no practical effect upon the interests of either the heirs at law or the widow. We are of the opinion that by the entry of the second decree the first was modified at the request of the widow and that then the widow acquired a life estate in all said productive property subject to forfeiture to the reversioners for waste as provided by statute.

It thus appears that at the time this suit for partition was filed the interest of the parties in said real estate was as follows: As to such as was productive the widow had a life estate and William, Luke and Thomas Connole were tenants in common in fee of the reversion. As to the unproductive the brothers Connole were tenants in common in fee simple, and said real estate was charged with the right of the widow to receive one-third of the net rents and profits during her life.

After the filing of the bill upon the suggestion of a justice of the Superior Court a decree was entered to which all the parties assented, ordering all of said real estate to be sold.

It was sold by a commissioner and the proceeds of the sale turned into the registry of the Superior Court. It is needless to consider the decision in *Newell* v. *Willmarth,* 30 R. I. 529, denying to the Superior Court jurisdiction to make partition of land between a dowress, to whom such land has been set off in severalty for life, and the owner of the fee in reversion. In the case before us the land has been sold with the assent of the parties and the proceeds of such sale in the registry of the Superior Court should be treated as land and disposed of in accordance with the respective interests which the parties had in said land. The Superior Court in its final decree provided for a distribution of the proceeds of the sale of the unproductive property by first awarding to the widow therefrom a gross sum intended to represent the present value of her dower interest in said land, and by then dividing the balance equally among the heirs at law. In the proceeds of the sale of the improved productive property the court awarded to the widow a gross sum which it found to be the present value of her life estate in such productive property and divided the balance equally among the heirs at law.

(4)    Although this suit is one for partition the Superior Court treated it as if it were a proceeding to set off dower. In giving to the widow a gross sum from the proceeds of the unimproved real estate in which dower had already been assigned to her the court was governed by what we must regard as misleading *obiter dictum* contained in the opinion in *Sheffield* v. *Cooke,* 39 R. I. 217, at p. 268. A gross sum was awarded to Mrs. Connole in the proceeds of the sale of the improved property, in which a life estate had been allotted to her in addition to her dower, because of the likeness of such an estate to one of dower. *Sheffield* v. *Cooke, supra,* dealt in part with the application of a widow to have assigned to her as dower a gross amount from the proceeds of the sale of the real estate of her deceased husband, in which real estate she was entitled to dower. The court refused to grant the widow's request, but in connection with

such refusal the following language appears in the opinion: "Although there is an absence of specific statutory authority for the proposition that the widow may be awarded a gross sum as dower in the proceeds of sales of land, the cases and authorities submitted we think show that such an award may be made when the circumstances justify it." We have re-examined the briefs filed in behalf of the widow in that case and the authorities submitted. In some of the authorities cited it appears, although not clearly, that real estate of a deceased husband had been sold to satisfy a lien paramount to a widow's dower and that then without statutory authority a gross sum had been allotted to the widow from the surplus of the proceeds of the sale, after satisfying such paramount lien. These are the only circumstances appearing in the authorities submitted in which such a method of assignment has been employed. From our examination we are satisfied there is no adequate support for the proposition that ordinarily dower may be assigned to a widow by awarding to her a gross sum in the proceeds of the sale of real estate without express statutory authority or the consent of all the parties. Such method of assignment of dower is not recognized in our statute. While courts of equity have jurisdiction in cases of dower (*Sprague* v. *Stevens*, 32 R. I. 361), they are without power to assign dower in any other manner than that provided by law.

The Superior Court fixed the amount of the gross sums awarded with reference to the widow's expectancy of life, in accordance with standard mortality tables. In the determination of certain matters courts are forced to use the tables of expectancy of life which record the average of a large number of instances. In the assignment of dower in the proceeds of the sale of land the use of such tables is unnecessary, because the court is not called upon to determine the widow's expectancy of life. In most cases it would result in injustice either to the heirs or to the widow to fix, in accordance with a table based upon averages, the present value of a dower interest, which depends upon the duration of a

future period so uncertain as that of the life of a particular individual. In dealing with this question the court said in *Bonner* v. *Peterson*, 44 Ill. 255–259, " We can imagine nothing more uncertain than the present value of a widow's life estate in real estate or in a fund." In *Herbert* v. *Wren*, 7 Cranch, 370, the court was considering whether a widow might be allowed in lieu of dower a sum in gross from the purchase money paid for land in which such widow was entitled to dower. Chief Justice MARSHALL, who wrote the opinion of the court, said that while the parties might concur in such an arrangement, the heirs "had a right to insist that instead of a sum in gross, one-third of the purchase money shall be set apart and the interest thereof paid annually to the tenant in dower during her life." In the absence of statutory provision authorizing the assignment of a gross sum courts have followed the doctrine of *Herbert* v. *Wren*, *supra*. We find no contrary authority. The *obiter dictum* contained in *Sheffield* v. *Cooke*, *supra*, should not hereafter receive the application given to it by the Superior Court in this case. The parties have the same relative interests in the proceeds of the sale of the land which they previously had in the land before its sale; and those relative interests should not be disturbed by the court without the consent of the parties.

The costs of suit and the expenses of the commissioner's sale should be deducted from the proceeds of the sale. There should be charged against the purchase money received for each parcel the same part of the total costs and expenses, as the price received for that parcel was of the total amount received for all the parcels. After deducting from the proceeds of the sale of the unimproved real estate the portion of the costs and expenses charged against it one-third of the balance should be securely invested and the interest received from such invested fund paid regularly to the respondent Clara Connole during her life; after her death one-third of such invested fund should be paid to each of the brothers of John Connole or to his heirs or assigns; or to the person

legally entitled to the whole or a part of the same. The remaining two-thirds of the proceeds of the sale of the un-improved real estate should· be divided equally among the three brothers of John Connole, securing the rights of persons, parties to this suit, in any portion thereof. After deducting from the proceeds of the sale of. the improved real estate that portion of the costs and expenses charged against it the balance should be securely invested and the interest from such invested fund paid regularly to the respondent Clara Connole during her life; after her death one-third of such invested fund should be paid to each of the brothers of John Connole or to his heirs or assigns, or to the person legally entitled to the whole or any part of the same.

It appears by the papers that during the progress of the suit Sarah E. Connole, wife of Luke Connole, was made a party and summoned in. It does not appear, however, by the decision of said justice or in the final decree that there was any adjudication of her rights, if any she had, nor provision made for their security.

On January 22, 1923, we will hear the parties as to the rights of said Sarah E. Connole, and as to the form of decree to be entered in the Superior Court.

*Edward M. Sullivan,* for complainant.
*Cooney & Cooney,* for Clara Connole.