### State of Vermont v. Mark St. Amour

[422 A.2d 937]

No. 39-79

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed November 3, 1980

*Mark J. Keller,* Chittenden County State's Attorney, and *Robert V. Simpson, Jr.,* Deputy State's Attorney, Burlington, for Plaintiff.

*James L. Morse,* Defender General, *William A. Nelson,* Appellate Defender, and *Daniel M. Albert,* Law Clerk (On the Brief), Montpelier, for Defendant.

**Barney, C.J.** The defendant is appealing his conviction for vandalism, contending that the trial court's charge unfairly benefited the State. The language in question dealt with the State's relationship to the witnesses it introduced. The defendant claims that the charge given misstates the law, and that, even in particulars where it does not, it prejudicially favors the prosecution.

The evidence dealt with damage done to the automobile owned by the principal of Burlington High School while it was parked in the school lot on a school day in May. Taking it in the light most favorable to the party prevailing below, the State, the testimony placed the defendant in the lot, lean-

ing against the principal's car, when the principal and assistant principal walked through the lot during the morning.

A little later it was reported to the principal that his car had been damaged. He went to the lot to find that the front grillwork, including the headlight, and the right-hand door had been kicked in. The gas cover had been ripped off its hinges. There was a note under the windshield reading: "This is a Simple (*sic*) of Revenage (*sic*) For kicking me out of School.

The assistant principal testified that in the middle of March, he had had a telephone conversation with the defendant, who was seeking readmission to the school after being expelled. Upon being told that he had to wait until fall, the defendant made remarks about the principal, saying, in effect, that it was too late for him and that he would get his.

The principal compared the writing in the note with an admission card of the defendant and came to the conclusion that the defendant wrote the note. The defendant admitted from the stand that he did in fact write the note, but claimed that he wrote it for a friend, whom he could not identify, in exchange for five dollars. He conceded being on the school premises on that day in May, and admitted having a smoke in the parking lot. He accounted for his presence by saying he was there to arrange to take a high school equivalency test.

A police investigator questioned the defendant about the incident. The defendant ultimately told him that the note was written for hire. The officer gave him three days to identify the person who allegedly bought the note, but the defendant never came forward with any information. No one other than the defendant testified on his behalf at the trial.

■ The objection to the court's charge is the only issue raised. At the trial, defense counsel stated that insofar as the charge referred to the duty of the State to bring forward witnesses, whether they be for or against the State, she agreed with it. Her objection was directed to the statements in the charge asserting that the State has no partisan end to serve, being as much interested to clear the innocent as to convict the guilty. She argued to the trial court that such statements would persuade the jury that the trial was not an adversary process.

The appellant's brief spends much of its force on the prosecutor's role with respect to presenting witnesses, an issue specifically disavowed by the defense below. This is a typical case of an exception upon which the trial court never had an opportunity to rule and which we will not review. *State* v. *Kennison*, 135 Vt. 238, 240, 373 A.2d 556, 558 (1977).

However, perhaps the complaint about the charge below and the arguments made in the brief on the issue, even as shored up with a contention not made below, are speaking to one concern. That is that the charge in question tends to overvalue, in the minds of the jury, the weight and credit to be given testimony tendered by the State.

■ The argument advanced is, of course, based on a presumed, and not on a proved, effect. Further, the defendant must acknowledge, as his brief does, that the charge is not erroneous, but reflects current law. Lastly, to reach the claim of error it is necessary to assume the application of the questioned charge out of context, in derogation of our rule that a jury instruction is not to be considered in isolation, but in the context of the whole charge. *State* v. *Persuitti*, 133 Vt. 354, 360, 339 A.2d 750, 754 (1975). This jury was fully instructed that the whole issue of credibility of witnesses was solely within its province; there is no suggestion that they did not so understand it.

As noted in both briefs, much of the content of the charge given in this case resembles the language of *State* v. *Slack*, 69 Vt. 486, 490, 38 A. 311, 312–13 (1897). The language in *Slack* dealt entirely with the proposition that, unlike a civil case, the State does not vouch for the witnesses it puts on the stand. Since the state's attorney is a public officer charged with prosecutional duties on behalf of the people of the state, the persons subject to his accusations and the nature of criminal charges brought must take their identification from the evidence as he discovers it. Therefore, he must often take his witnesses as he finds them, and, for that reason, is given the right to cross-examine and impeach even those he himself has called to the stand. With the rule being otherwise with respect to criminal defense counsel and counsel in civil actions, there is no impropriety in explaining the difference to the jury. The charge explains why the prosecutor may cross-

examine his own witnesses. We trust that, in the future, the lower courts will explain the purpose of this jury charge when giving it to the jury, and will restrict its use only to those cases in which the state of the evidence demonstrates its necessity.

■ The defendant's brief appears to claim that the lower court charged that the State had a duty to produce all witnesses whose testimony would aid the jury. Laying aside the rejection of this claim of error on the defendant's behalf below, in the argument here the defendant ignores the distinction long since drawn in Vermont law that the prosecutor has full discretion to determine which of the witnesses he will put on the stand. He is only bound to produce those witnesses who, in his opinion, may lead to the truth in the case. That is what the charge said, and that is our law. *State* v. *Machunsky*, 129 Vt. 195, 199, 274 A.2d 513, 515–16 (1971). There is no possible basis to read into that proposition any notion that the State was required to or did call all possible witnesses.

■ Turning to the real claim of error, that of a concept of a lack of adversariness, it was eloquently dispelled by the United States Supreme Court in *Berger* v. *United States*, 295 U.S. 78, 88 (1935):

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

■ It should be noted that all of the contentions of the defendant, properly reserved or not, have been disposed of

without reference to any showing of prejudice. The State correctly points out that the defendant's testimony did not contradict any of the testimony of the State's witnesses in any essential particular; any inordinate weight which the jury might have given the prosecution's evidence made no difference in the outcome. In such a case, any error, if error there was, in the portion of the charge challenged would be harmless error. To obtain reversal, the appellant must show prejudice. *State* v. *Morse,* 127 Vt. 137, 139–40, 241 A.2d 328, 330 (1968). He has not done so here.

*Judgment affirmed.*