## State of Vermont v. Donald D. Peters

[450 A.2d 332]

No. 409-80

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed June 8, 1982

Motion for Reargument Denied July 2, 1982

*Raymond G. Bolton,* Bennington County State's Attorney, and *William D. Wright,* Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

*Andrew B. Crane,* Defender General, *William A. Nelson,* Appellate Defender, and *Nancy E. Kaufman,* Montpelier, for Defendant-Appellant.

**Peck, J.** This is an appeal from a jury verdict finding defendant guilty of simple assault on a law enforcement officer in violation of 13 V.S.A. §§ 1023 (a) (1), 1028. In order to understand the facts of the instant case, we review briefly those of an earlier proceeding involving the defendant.

On March 20, 1980, defendant, a farmer in Bennington County, was found to have permitted a bull more than nine months old to run at large in violation of 20 V.S.A. § 3346. The trial judge imposed the maximum fine of $100; $25 to be paid immediately, the remaining $75 to be paid by May 23, 1980, unless defendant properly fenced his property, in which case the outstanding fine was to be stricken. Unfortunately, this pragmatic resolution was to mushroom into far more serious problems for defendant.

A hearing was scheduled for June 6, 1980, apparently to resolve both defendant's motion to proceed in forma pauperis on appeal and the issue of the unpaid portion of the fine. This hearing was continued to July 7, 1980, the notice to defendant consisting of a first class letter mailed to his address in North Bennington. The letter was not returned undelivered to the court, although at trial defendant denied receiving it. In any event, when defendant failed to appear on July 7, 1980, a bench warrant for his arrest was issued.

Nearly one month later a Vermont state police officer observed defendant operating his truck in Bennington. After confirming the existence of the outstanding warrant, the officer followed defendant's vehicle into a parking lot. The officer approached defendant, identified himself as a state trooper, and informed him that he was under arrest pursuant to a bench warrant. Despite his repeated requests defendant

was not shown the warrant or told of the reason for its issuance, as the officer did not have it in his possession.[1] He was, however, informed by the officer that the warrant would be shown to him at the police station. Defendant apparently considered this response unsatisfactory and refused to leave his truck.

Faced with defendant's refusal to comply with his directive, the officer attempted to complete the arrest by removing him forceably from the truck; defendant retaliated by striking him on the chin. After a brief scuffle, defendant was subdued and subsequently charged with simple assault on a law enforcement officer. Defendant appeals from his conviction of that charge urging two primary grounds for reversal. First, defendant claims that the trial court erred in instructing the jury that he was not justified in forceably resisting an illegal arrest. Second, he argues that the court erred in not instructing the jury as to the definition of "lawful duty" as that term is used in 13 V.S.A. § 1028.

I.

At trial, defendant requested the jury be instructed that "a person who is illegally . . . arrested may use a reasonable amount of force in an attempt to free himself." This request was refused, the trial judge instructing the jury instead that "A private citizen may not use force to resist arrest by one he knows or has good reason to believe is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances." Defendant asserts that the charge as given constitutes reversible error.

There is in Vermont no statutory right to resist an unlawful arrest. Nonetheless, many jurisdictions have established

---

[1] V.R.Cr.P. 4(f)(2)(C) permits arrest pursuant to a warrant where the officer does not have the warrant in his possession at the time of the arrest. Although it is clearly advisable and expected of law enforcement officers that they inform defendants of the offense charged *before* making an arrest if circumstances permit, as a safeguard against Kafka-like bewilderment on the part of arrestees, the rule "does not in terms make the information a condition precedent to a valid arrest." *Bryson* v. *United States*, 419 F.2d 695, 701 n.27 (D.C. Cir. 1969) (interpreting identical federal rule, Fed. R. Crim. P. 4(c)(3)).

such a right at common law. See, e.g., *John Bad Elk* v. *United States,* 177 U.S. 529 (1900); Chevigny, *The Right to Resist an Unlawful Arrest,* 78 Yale L. J. 1128 (1969). Indeed, this Court has recognized that under certain circumstances one may resist an unlawful arrest with reasonable force. E.g., *State* v. *Malnati,* 109 Vt. 429, 199 A. 249 (1938) (warrantless arrest); *State* v. *Jasmin,* 105 Vt. 531, 168 A. 545 (1933) (warrantless arrest); *State* v. *Mancini,* 91 Vt. 507, 510, 101 A. 581, 583 (1917) (warrantless arrest); *State* v. *Hooker,* 17 Vt. 658, 671–72 (1845) (tortious entry into dwelling and arrest in the service of civil process). The State urges us, however, to take this opportunity to reassess the wisdom of these decisions and join those courts which have held that a citizen may not use force to resist arrest by one he knows or has good reason to believe is a law enforcement officer engaged in the performance of his duties, regardless of whether the arrest is illegal under the circumstances. See, e.g., *City of Columbus* v. *Fraley,* 41 Ohio St. 2d 173, 324 N.E.2d 735, *cert. denied,* 423 U.S. 872 (1975); *State* v. *Richardson,* 95 Idaho 446, 511 P.2d 263 (1973), *cert. denied,* 414 U.S. 1163 (1974); *State* v. *Mulvihill,* 57 N.J. 151, 270 A.2d 277 (1970); *Miller* v. *State,* 462 P.2d 421 (Alaska 1969).

We note at the outset that this Court has never directly addressed the issue whether an individual arrested pursuant to a warrant which is subsequently determined to be invalid is entitled to resist that arrest. But cf. *State* v. *Blaine,* 133 Vt. 345, 348, 341 A.2d 16, 18 (1975) (even if arrest warrant is illegal defendant is not justified in threatening officer with gun to effectuate escape). This is precisely the issue now before us as defendant seeks to justify his resistance to arrest on the claimed illegality of the bench warrant.[2]

We agree with the Maryland Court of Appeals that, unlike the long standing common law rule concerning resistance to illegal *warrantless* arrests:

---

[2] Defendant attacks the bench warrant on the grounds that it was illegally issued, invalid on its face, and improperly executed. It is unnecessary to resolve these issues in light of our holding *infra* that defendant was not entitled to forceably resist the arrest, regardless of its legality.

there is ambiguity and confusion as to the extent to which the right to resist an arrest made on a defective warrant existed at common law, and there is no consensus among American authorities as to what defect in a warrant is sufficient to render it null and void.

*Rodgers* v. *State*, 280 Md. 406, 410, 373 A.2d 944, 947, *cert. denied*, 434 U.S. 928 (1977). Nevertheless, we do not believe that reason and common sense support the permitting of forceable resistance to a peaceful arrest made by a law enforcement officer pursuant to a warrant duly issued by a judicial officer. Accord, *id.; State* v. *Wright*, 1 N.C. App. 479, 162 S.E.2d 56, *aff'd*, 274 N.C. 380, 163 S.E.2d 897 (1968).

Our decision in *In re Provencher*, 127 Vt. 558, 255 A.2d 180 (1969), although not dealing with the precise issue raised by this appeal, is instructive. There we held that a conviction of escape from jail cannot be invalidated on the ground that the original detention was itself illegal. The underlying principle of that decision was expressed as follows:

> The basic postulate that we are governed by rule of law requires that we recognize its authority, and recognize likewise our duty to challenge its application by resort to proper judicial proceedings, not self-help.

*Id.* at 562, 255 A.2d at 183. In *State* v. *Carlson*, 133 Vt. 562, 349 A.2d 237 (1975), we again recognized the fundamental principle that "those who are under a court order may not challenge that order by violating it." *Id.* at 564, 349 A.2d at 238 (citing *Walker* v. *City of Birmingham*, 388 U.S. 307 (1967)). The rationale of these decisions weighs heavily against extending the right to resist unlawful arrests to those made pursuant to a warrant.

We also find persuasive the reasoning of those courts which have overruled the common law right to resist unlawful arrest. The Alaska Supreme Court has carefully considered the issue and stated:

> the question is whether any amount of force should be permitted to be used by one unlawfully but peaceably arrested. We feel that the legality of a peaceful arrest should be determined by courts of law and not through a trial by battle in the streets. It is not too much to ask

that one believing himself unlawfully arrested should submit to the officer and thereafter seek his legal remedies in court. Such a rule helps to relieve the threat of physical harm to officers who in good faith but mistakenly perform an arrest, as well as to minimize harm to innocent bystanders. The old common law rule has little utility to recommend it under our conditions of life today.

*Miller* v. *State, supra,* 462 P.2d at 427. Similarly, in *State* v. *Koonce,* 89 N.J. Super. 169, 183, 214 A.2d 428, 435–36 (1965), the Appellate Division of the New Jersey Superior Court declared:

an appropriate accommodation of society's interests in securing the right of individual liberty, maintenance of law enforcement, and prevention of death or serious injury not only of the participants in an arrest fracas but of innocent third persons, precludes tolerance of any formulation which validates an arrestee's resistance of a police officer with force merely because the arrest is ultimately adjudged to have been illegal. Force begets force, and escalation into bloodshed is a frequent probability. The right or wrong of an arrest is often a matter of close debate as to which even lawyers and judges may differ. In this era of constantly expanding legal protections of the rights of the accused in criminal proceedings, one deeming himself illegally arrested can reasonably be asked to submit peaceably to arrest by a police officer, and to take recourse in his legal remedies for regaining his liberty and defending the ensuing prosecution against him.

These considerations are even more compelling where the arrest is made pursuant to written process. The potential for arbitrary and capricious arrest is greatly diminished when a judicial officer rather than a law enforcement officer on the street has determined probable cause to arrest. In such cases, respect for rule of law demands that the validity of the arrest be adjudicated in the courtroom, not through trial by combat in the street. *In re Provencher, supra.*

■■ Accordingly we adopt what we believe is the better rule under today's social conditions and hold that an arrest made by a law enforcement officer pursuant to a warrant issued by a judicial officer, whether or not that warrant later proves to be invalid, may not be forceably resisted.[3] There was no error in refusing to give defendant's proposed charge.

We see no reason why, as a general rule, the principle announced today as applicable to arrests made by a law enforcement officer pursuant to a warrant should not apply equally to arrests by an officer acting without a warrant. It has been suggested that we announce such a holding here as a matter of law, relying on the doctrine of prospective overruling to justify such a holding.[4] Without rejecting this theory outright for any future acceptance and use, we decline to accept the opportunity in this case, preferring to address the issue of resistance to warrantless arrests when the factual pattern of a given case requires us to do so. See *Wood* v. *Wood*, 135 Vt. 119, 121, 370 A.2d 191, 192 (1977).

## II.

Defendant's second contention is that the trial court's charge to the jury on the "lawful duty" element of 13 V.S.A. § 1028 was inadequate, mandating reversal.

Section 1028 renders the offense of simple assault, 13 V.S.A. § 1023, a separate and more serious crime when committed upon a law enforcement officer performing a lawful duty. It is an essential element of the offense that the assault occur "while the officer . . . is performing a *lawful duty*." 13 V.S.A. § 1028(a) (emphasis added). The statute does not, however, define this element.

The State conceded at oral argument that the trial court did not provide the jury with any standards for determining whether the state trooper was performing a lawful duty when he was allegedly assaulted. Nonetheless, the State argues that even if this was error, it is harmless error because the state trooper was performing a lawful duty as a matter of law

---

[3] A citizen may, however, reasonably defend against excessive force employed by the arresting officer. See *State* v. *Mulvihill, supra.*

[4] See Levy, *Realist Jurisprudence and Prospective Overriding,* 109 U. Pa. L. Rev. 1 (1960).

348

when he arrested defendant. Naturally, defendant disputes this claim and argues to the contrary that we can only find that the trooper was not performing a lawful duty because of the asserted deficiencies in the issuance and execution of the bench warrant.

■■ We do not believe, as defendant would have us, that the legislature in enacting 13 V.S.A. § 1028 intended its enhanced penalty provisions to be applicable only where every aspect of the officer's conduct was in strict compliance with technical legal requirements. Defendant's theory would result essentially in the trial of the officer rather than the defendant, clearly not the intended purpose of the statute. It is irrational to suppose, for example, that police officers assaulted while executing a search warrant in good faith are to be deprived of the protections of § 1028 should the warrant subsequently be determined to be invalid. It is equally inconceivable that a defendant who assaults a law enforcement officer executing an arrest warrant is to be rewarded, in effect, by exemption from the enhancement provisions of § 1028 should the warrant subsequently prove to suffer from a technical defect. The defendant's interpretation of § 1028 thus runs afoul of a fundamental rule of statutory construction that no unreasonable result is presumed to have been contemplated by the legislature. *Whitcomb* v. *Dancer,* 140 Vt. 580, 586–87, 443 A.2d 458, 461 (1982); *Nolan* v. *Davidson,* 134 Vt. 295, 299, 357 A.2d 129, 132 (1976). Accordingly, we conclude that the legislature intended to provide increased penalties against anyone who assaults a law enforcement officer in the performance of an official duty, knowing or having good reason to believe that the person is in fact such an officer.

■ There is no evidence in the record that the arresting officer was on a capricious frolic of his own outside the scope of his employment. He identified himself and his official capacity was admittedly known to defendant. Defendant was also informed that he was being arrested pursuant to a bench warrant. The officer was, therefore, acting in his official capacity and protected from assault by the provisions of § 1028. We hold as a matter of law that the police officer was acting within the scope of what he was employed to do, i.e.,

his lawful duty; defendant was not, therefore, prejudiced by the trial court's failure to adequately define the element of lawful duty. See *State v. Sidway*, 139 Vt. 480, 431 A.2d 1237 (1981).

*Affirmed.*